## The People ex rel. Leon Parra *v.* Matienzo.

### Appeal from the District Court of Ponce.

No. 258.—Decided June 27, 1908.

Quo Warranto—Keeper of the General Notarial Archives—Accepting Office of President of a Criminal Court.—In the case at bar the defendant being notary was appointed by the Military Government and the office of president of a former *Audencia Criminal de Ponce*, and having ceased to discharge the duties of that office was appointed by the said Military Government as a notary in and for Ponce. The plaintiff alleged that those two offices being incompatible the office of notary became vacant. The court held that having been again appointed a notary by the same Government, the office continued in existence.

Keeper of the General Notarial Archives—Absence From the District—Designation of Substitute.—In the case at bar it was proved that the defendant, upon being appointed a member of the Executive Council, left a substitute in charge of his notarial office and frequently, for long periods, he discharged the duties of a notary and, therefore, continued to practice as such.

ID.—PRACTICING AS A NOTARY—EXPRESS DECLARATION OF VACANCY OF OFFICE
NECESSARY.—The defendant practicing as a notary and keeper of the general
archives of the district, his appointment will continue in force until the gov-
ernment or power from which he derives his authority obtains or declares the
office vacant.

ID.—OATH OF OFFICE.—The law does not require that the keeper of the general
archives should take an oath to discharge the duties of that office, because
it is not a new office, but a designation of the oldest notary by the Attorney
General.

The facts are stated in the opinion.

*Mr. José Tous Soto* for appellant.

The respondent did not appear.

MR. JUSTICE WOLF delivered the opinion of the court.

We are concerned in this case with a writ of "*quo war-
ranto*" to test the right of Rosendo Matienzo Cintrón to hold
the office of general archive keeper as the oldest notary of
the district of Ponce. The court dismissed the complaint be-
low. The appellant alleges here that the appellee is not en-
titled to his offce: First, because for more than three con-
secutive months he accepted and filled the office of president
of the now superseded Criminal Court of Ponce, a position
inconsistent with the office of notary; second, for, in like man-
ner, having filled the offce of member of the Executive Coun-
cil with residence in San Juan with an annual salary of $3,000,
the holding of which position produced a vacancy, even if
the previous reason did not; third, because of the change in
the residence from Ponce to San Juan; fourth, because he
did not leave a legal substitute, nor obtain permission to
absent himself; fifth, because he allowed many months to
elapse without taking possession of his office as general
archive keeper, or to take his oath.

The appellant alleges besides that Manuel León Parra is
the proper person to fill the position.

From the proof it appears that the appellee, during the
pendency of the Military Government in Porto Rico, accepted
the position of criminal judge, that he did so with the under-
standing and consent of the military authorities and that he

was thereafter renamed notary, such certificate bearing date
of the 10th of November, 1898. The appellant commenced his
notaryship on July 3, 1901, so that the name of the respond-
ent was of a date anterior to any other notary in Ponce, the
appellant being next to Rosendo Matienzo Cintrón, the oldest
named notary.

We think the first objection of counsel is met by this state
of facts. The Military Government was all powerful, and
even if appellee had ceased, he was restored by the act of
such Government. With respect to the second objection we
cannot agree with the court below that to declare an incom-
patibility betweeen the office of notary and the office of mem-
ber of the Executive Council would be to put a limit on the
power of the President of the United States and invalidate
the spirit of the Foraker Law; the appellee had only to elect
which of the two offices he would continue to hold and if the
Notarial Law made it impossible for a notary to continue his
office and be a councilman, such notary on being named to
the Executive Council would have to select which position
he would hold. It appears that the appellee kept his office
in Ponce continually open in charge of a substitute, and that
he was frequently in that city for extended periods, and that he
himself on occasions took charge of his office. Article 16 of
the Notarial Law of "Ultramar" provided that the exercise
of the office of notary was incompatible with every other pub-
lic office which received pay or emolument from the general
budget, provincial or municipal, and which office obliged them
to live outside of their domiciles, except the positions of.
deputy to the "*Cortes*" and provincial deputy (*diputado pro-
vincial*), respectively. It thus appears that Rosendo Matienzo
Cintrón did not continualy reside away from Ponce and, as
a matter of fact, continued to act as notary. Rosendo Ma-
tienzo Cintrón, as admitted by the appellant, is actually under
color of authority acting as notary at Ponce, and also acting
as general archive keeper; that until the Government, or the

power from which he derived his authority, take some steps to declare his office of notary vacant on account of some failure on his part to comply with the Notarial Law, if his original nomination was valid, such nomination continues. Appellee was duly named. It is alleged that certain things happened which made his office vacant, but we think that public interest requires that some direct steps on the part of the Government should first be taken to declare his notaryship vacant. This becomes more evident when we consider that article seven of the notarial rules, which prevailed in Spanish times, provided that the vacancies in the office of notary should be published in the official newspapers of the province situated in the territory of the notarial college and this publication fell under the special privileges of the Presiding Justices of the superior courts of justice (*audiencias*), according to the Royal Decree of January 18, 1877. It is a little too late, after he has been suffered to retain his position as notary, to question his previous alleged defaults at a time when the Government imposes new duties upon him. No attempt was made in the petition before us to pray that the office of notary be declared vacant, but simply that the office of general archive keeper be declared vacant. The public has an interest in its notaries, and we think that due process of law would require a direct proceeding to declare such a vacancy. Until such direct proceeding is taken the notaryship continues, and the alleged breaches or defaults of the incumbent are waived. These considerations likewise dispose of the third objection of counsel.

As to the fourth objection, that there was no legal substitute, the facts prove the contrary, and we agree with the court below that his failure to obtain permission was only of interest in case administrative proceedings had been taken against him. With respect to his failure to take an oath as archive keeper, we agree with the court below that no such oath has been demanded by law. It is not a new office but a designation of the oldest notary by the Attorney General.

Counsel for appellant say that there is no evidence of his having taken the oath of notary, contending that the only evidence to this effect, namely, the verbal statement of Sr. Vidal, is inadmissible, because an oath being a matter of record, should be proved by the record; but unless an objection of this kind is made in the court below, that court is justified in accepting the secondary evidence.

It may be that the appellee allowed some time to go without taking possession of his office. He did, apparently, take possession of it without any complaint having been made by appellant or by any other notary. It is a little too late to complain of such failure after the appellee had formally taken possession. For the reasons set forth the judgment must be affirmed.

*Affirmed.*

Justices Hernández, Figueras and MacLeary concurred.

Mr. Justice Quiñones did not sit at the hearing of this case.